IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rita King, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 1937 |
| | ) |
| Glenn Evans, *et al*. | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Plaintiff Rita King ("King") brings this suit pursuant to 42 U.S.C. § 1983 against several officers of the Chicago Police Department -- Lieutenant Glenn Evans ("Evans"), Officers D.T. Clifford ("Clifford"), R.A. Sutton ("Sutton"), K.L. Rogers ("Rogers"), and Connie Dixon ("Dixon") -- and the City of Chicago. King alleges that Evans used excessive force in compelling her to comply with fingerprinting and photographing procedures following her arrest in 2011. In the present motion, King seeks summary judgment solely with respect to defendant Evans. For the reasons explained below, the motion is denied.

I.

On April 10, 2011, Officers Clifford and Sutton responded to a domestic disturbance call at the home of King's boyfriend,

who had called the police because King had threatened to break his car windows. Def.'s Local Rule 56.1(b)(3)(c) Statement of Add'l Facts ("Def.'s SOF") ¶¶ 2-3. King was arrested and taken to the police station. According to the arrest report, and to some of the officers present, King reported at various points while in custody that she suffered from mental illness[1] and that she had been using crack cocaine. *See* Arrest Report (Pl.'s Ex. 3) at 3 ("Arrestee States She Has Mental Illness"); *id*. ("Arrestee Stated That She Had Smoked Crack"); Rogers Dep. at 51:14-15 (testifying that King stated that she had been smoking crack); Evans Decl. ¶ 5 (averring that King told him "that she was high on crack cocaine, and that she had a fight with her boyfriend").

King spent about two hours in a processing room without incident while Officers Clifford and Sutton completed a report and other paperwork in connection with her arrest. However, the defendants claim that King's demeanor changed when Clifford and Sutton attempted to escort her to the lockup area to be fingerprinted and photographed. Several officers testified that King became highly agitated at this point, reporting that King was screaming, crying, and using profanity. *See, e.g.*, Def.'s SOF ¶¶ 6, 7, 20. Officers also testified that King kicked the

---

[1] In her deposition, King stated that she suffers from schizophrenia, major depression, bipolar disorder, and borderline personality disorder. *See* King Dep. (Pl.'s Ex. 5) at 10:23-11:2.

2

door to the lockup area to prevent Officer Sutton from opening it, *see* Clifford Dep. (Pl.'s Ex. 2) at 53:12-14; Sutton Dep. (Pl.'s Ex. 6) at 59:9-11, and that King tried to break away from Officer Sutton, *see* Clifford Dep. (Pl.'s Ex. 2) at 52:21-24.

King admits that, once inside the lockup, she refused to be fingerprinted or photographed. However, she claims that she was merely crying and passively refusing officers' verbal directions. King alleges that after she refused, one of the officers said, "We know somebody who can get your fingerprints." *See* Pl.'s Local Rule 56.1 Statement ("Pl.'s SOF") ¶ 15. Shortly thereafter, Evans, who was acting as the watch commander at the time, entered the lockup. According to King, Evans approached her, grabbed her nose, and began pushing it, telling her repeatedly, "I'm going to push your nose through your brains." King is not entirely clear regarding how long this went on. In her complaint, she claims that Evans pushed her nose for several minutes. Pl.'s 2d Am. Compl. ¶ 9. In her summary judgment papers, however, she is silent as to the duration. *See* Pl.'s SOF ¶ 22. In any event, King maintains that the incident caused her to bleed profusely and to experience excruciating pain. Pl.'s SOF ¶ 19.

Evans does not dispute that he made contact with King, but he denies her characterization of the encounter. Specifically, Evans states that he grabbed King's head because she had begun

3

spitting in his face. Evans Decl. ¶ 9. He describes his contact with King as "a firm grasp," not "a forcible strike, a joint lock, or restraint," and claims that it lasted "mere seconds." *Id*. ¶ 10. Evans denies making any remark about pushing King's nose into her brain. *Id*. ¶ 13.

Other officers testified that Evans applied pressure to King's nose with the side or palm of his hand. *See* Clifford Dep. (Pl.'s Ex. 2) at 82:12-14; Sutton Dep. (Pl.'s Ex. 6) at 82:4-6; Rogers Dep. (Pl.'s Ex. 4) at 74:3-75:1. They also testified that the contact lasted only for two or three seconds. *See* Rogers Dep. (Pl.'s Ex. 4) at 77:22-78:1; Clifford Dep. (Pl.'s Ex. 2) at 82:2-3; *cf.* Sutton Dep. (Pl.'s Ex. 6) at 84:14-85:3 (unable to remember the exact duration of the contact, but not more than 15 seconds). Def.'s SOF ¶ 9. Moreover, all of the officers assert that King was not bleeding as a result of the encounter, and that she didn't appear injured or complain of any injuries.

After the encounter with Evans, King allowed herself to be fingerprinted and photographed, and she was released after a few hours. Two days later, on April 12, 2011, she went to Roseland Community Hospital complaining of pain. She underwent a CT scan, which showed "a left medial orbit [i.e., eye socket] fracture with some herniation of orbital fat." Pl.'s SOF ¶ 27. The severity and cause of the fracture could not be determined. Pl.'s SOF ¶ 27. King attributes the injury to her confrontation

with Evans. However, Evans cites the opinion of a medical expert who stated that there was no evidence to indicate that King's fracture could have been caused by any injury that she had sustained as a result of an incident two days earlier (i.e., on the date of her arrest). *See* Letter from Dr. Charles Weingarten, M.D. to Tiffany Y. Harris, Senior Corporation Counsel, City of Chicago Dept. of Law (Oct. 12, 2015) (Def.'s Ex. E) (opining "[w]ith a reasonable degree of medical certainty there is no evidence of any injury to Ms. King on April 10, 2011 that could have caused a 'blowout' fracture of her orbit or the multiple fractures of the nasal bones as noted on CT.").[2]

II.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[2] Evans argues that King's injury had been sustained during previous incidents of domestic abuse. In support of this claim, he cites generally to "Plaintiff's Medical Records." *See, e.g.*, Def.'s SOF ¶ 35. However, these medical records have not been included among the exhibits submitted by Evans in his opposition to King's summary judgment motion. For purposes of this motion, therefore, I have not relied on any assertions based on these records.

5

"Excessive force claims are reviewed under the Fourth Amendment's objective reasonableness standard." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). The excessive-force inquiry is multifactorial. *See, e.g.*, *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) ("Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.").

The excessive-force inquiry is also highly fact-specific. *See, e.g.*, *United States v. DiSantis*, 565 F.3d 354, 364 (7th Cir. 2009) ("[T]he question of whether a police officer has used excessive force in arresting a suspect is a fact-intensive inquiry turning on the reasonableness of the particular officer's actions in light of the particular facts and circumstances of the situation faced."). For these reasons, courts have observed "that summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d

856, 862 (7th Cir. 2010) (citing *Catlin v. City of Wheaton,* 574 F.3d 361, 367 (7th Cir. 2009)).

The latter observation unquestionably applies here. As detailed above, factual disputes are present with respect to several of the critical factors relevant to the excessive-force inquiry. For example, the parties offer conflicting evidence regarding King's behavior leading up to and during Evans's intervention: was King merely crying and refusing to cooperate, or was she agitated, kicking, screaming, and/or spitting? The record is similarly divided regarding the kind, degree, and duration of the force Evans used on King: how much pressure did Evans apply to King's nose, and for how long did he apply it? Also disputed are the cause and extent of King's injuries: was she bleeding profusely after the incident, and was her fractured eye socket in fact the result of Evans's actions?

King insists that the force used by Evans was excessive because she posed no threat to anyone and was merely resisting passively. She cites the testimony of Wayne Gulliford ("Gulliford"), Chief of the Bureau of Patrol for the Chicago Police Department, whom she claims "unequivocally stated a pain compliance technique to a passive resister in a lockup was not appropriate." Pl.'s Reply Br. at 6-7.[3] This argument fails for

---

[3] Evans claims that, at least under his account of the facts, King could properly be characterized as an active resister. In support of

several reasons. As an initial matter, the import of Gulliford's testimony is unclear because it is provided without any context. Putting aside the question of whether his comment ("I don't -- you know, for a passive resister, I would say it's not appropriate") can fairly be characterized as "unequivocal," the transcript excerpts submitted by King reveal nothing about how the expression "passive resister" was defined during Gulliford's deposition. Without further information, it is simply impossible to determine how his testimony might apply to King's behavior.

Second, and more importantly, King's argument ignores the parties' factual disputes regarding her and Evans's conduct. If, as Evans claims, King tried to break free before being ushered into the lockup area, and if she was agitated and spitting, it is far from clear that her resistance can properly be described as "passive." King contends that the defendants' answer to her complaint belies Evans's claim that he needed to resort to force due to the unruliness of her behavior. In particular, King cites the defendants' assertion "that only

---

this position, he cites the testimony of Larry Snelling, identified as the Chicago Police Department's "Use of Force Trainer." *See, e.g.*, Def.'s Resp. Br. at 9; Def.'s SOF ¶ 25. King argues that Snelling's opinion should be disregarded because the defendants failed to disclose him as an expert in accordance with Fed. R. Civ. P. 26(a)(2). *See* Pl.'s Resp. to Def.'s Add'l SOF ¶ 25. In any event, Evans failed to submit a copy of Snelling's testimony in responding to King's summary judgment motion. Accordingly, I have disregarded any of Evans's claims to the extent that they are premised on Snelling's testimony.

8

after Plaintiff refused to comply with [officers'] verbal commands did Defendant Evans use a reasonable degree of force in order to control Plaintiff." Defs.' Answer to Am. Compl. ¶ 9 (emphasis removed). According to King, this shows that Evans used force merely because she refused to comply with a verbal command, not because her behavior was out of control. But King's reading of the defendants' answer is spurious: the fact that Evans used force only *after* King refused to comply does not mean that her refusal was the *only reason* for his use of force.

Third, even assuming that King was resisting only passively, it simply does not follow that Evans's use of force was excessive. On the contrary, courts have found the use of varying degrees of force to be justified in a wide variety of settings involving passive resisters and individuals refusing to obey directives. *See, e.g.*, *Cherry v. Washington Cty., Wis.*, 526 F. App'x 683, 687-88 (7th Cir. 2013) (finding no excessive force where officer pushed plaintiff to the ground and pressed his face against the road, causing excruciating pain, after plaintiff disobeyed the officers' instructions to look straight ahead and not turn around); *Brownell v. Figel*, 950 F.2d 1285, 1288 (7th Cir. 1991) ("pen hold" and "mandibular angle pressure hold" not excessive where plaintiff was apparently intoxicated and failed to cooperate in administering a Breathalyzer test); *see also Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015)

("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment.") (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

IV.

In addition to opposing King's motion for summary judgment on the grounds discussed above, Evans goes on to assert that he is entitled to qualified immunity. This argument is presented almost as an afterthought and appears to be offered only defensively, as a further reason for denying King's motion for summary judgment, rather than a basis for granting summary judgment in Evans's own favor.

The law of qualified immunity is easily summarized. "Governmental actors performing discretionary functions enjoy qualified immunity, meaning that they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Volkman v. Ryker*, 736 F.3d 1084, 1089-90 (7th Cir. 2013) (quotation marks omitted). "The qualified immunity analysis therefore traditionally involves a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. The second question is whether that particular constitutional

right was clearly established at the time of the alleged violation." *Id.* at 1090 (citations omitted).

As already discussed, the record in this case is rife with factual disputes over fundamental issues. This is true above all when it comes to the nature and extent of the force used during Evans's contact with King. In light of these factual disputes, it is impossible to determine whether Evans's actions violated King's constitutional rights. *See, e.g.*, *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial."); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[I]f the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made."). Accordingly, based on the evidence before me, I am unable to conclude that Evans is entitled to qualified immunity.

## Conclusion

For the reasons discussed above, King's motion for partial summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 6, 2016