IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RITA KING,                          )
                                    )
            *Plaintiff,*             )
                                    )    No. 13 CV 1937
      *-vs-*                         )
                                    )    Judge Bucklo
GLENN EVANS, *et. al.,*              )
                                    )    Magistrate Judge Gilbert
                                    )
            *Defendants.*            )

## RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE*

Plaintiff, by counsel, responds to defendants' motions in limine as follows:

### 1. Bar Testimony, Evidence or Argument of Violations of CPD General Orders, Rules, and Regulations

Defendants argue for a blanket exclusion of reference "to any purported violation of any CPD General Orders or rules and regulations or directives." ECF No. 319 at 2. The Court should deny this motion.

In *Simmons v. City of Chicago*, 14 C 9042, 2017 WL 3704844, at *4 (N.D. Ill. Aug. 28, 2017) (Kennelly, J.), the district judge denied the same motion because "[s]uch evidence may be relevant and admissible on the question of intent, and it likewise may be admissible on the question of punitive damages. *See generally Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009)."

Here, the Court should follow the same reasoning. The CPD policies are relevant to understand permissible use of force to an uncooperative arrestee in a

police station, the policy and procedure to discipline officers, and plaintiff's overall *Monell* allegation against the City.

## 2. Bar Evidence or Argument that the City Failed to Discipline the Defendant Officers in this Case for any Alleged Misconduct

The defendant officers ask the Court to "bar evidence or argument that the City failed to discipline the Defendant Officers for any alleged misconduct in this case" because it is "highly prejudicial, irrelevant, and confusing to the jury." ECF No. 319 at 2. The Court should overrule this motion because plaintiff alleges the City has a policy and procedure of failing to discipline officers who use excessive force.

Here, plaintiff King complained to IPRA the day after being injured in the 6th District. IPRA initially returned findings, after many years, recommending discipline against defendants Evans, Sutton, and Clifford. This recommendation was overturned by the CPD's command channel review.

Following a second investigation by IPRA, discipline was again recommended for Evans, Sutton, and Clifford. IPRA and Superintendent Johnson were unable to agree on the penalty phase in 2016. *See* ECF No. 319 at 14-15, Defendants' Motion in Limine No. 16. At the time of his deposition in August 2017, Superintendent Johnson was uncertain whether the individual defendants have been disciplined.

This evidence is certainly relevant and necessary for plaintiff's *Monell* claim against the City, that CPD members are not disciplined for using unreasonable force. In addition, defendants are unable to meet their burden under Rule 403 for exclusion of this prejudicial evidence. *See Simmons*, 2017 WL 3704844, at *8 (considering Rule 403, the

court noted that certain evidence is, "no doubt prejudicial, but the Rule requires a showing of *unfair* prejudice that significantly outweighs the probative value of the evidence" and defendants have not satisfied this burden). Accordingly, the Court should deny this motion.

### 3. Bar Any Mention or Argument During Jury Selection Related to Conditioning the Jury to Award a Specific Amount of Money Damages

Plaintiff agrees that she will not "inquire of the venire whether they think that any amount of money is too little or too much for a certain type of case." ECF No. 319 at 3.

### 4. Bar Plaintiff from Making an Improper Opening Statement

Defendants request to preclude improper opening statements by plaintiff. ECF No. 319 at 4. This motion should be denied for the same reasons as *Simmons*, "it is basically a request for an order to follow the rules, which is superfluous and should be unnecessary." 2017 WL 3704844, at *5.

### 5. Bar Evidence Including, but Not Limited to, Civilian Complaints, Lawsuits, Complaint Registers or Other Disciplinary Proceedings Pending or Past Claims Against Defendants and Any Non-Defendant Police Witness [City does not join if bifurcation denied]

The defendant officers seek to exclude any evidence of "prior instances of alleged misconduct by the Defendant Officers and other non-defendant police officer witnesses who may be called to testify at trial." ECF No. 319 at 4. Defendants argue that it is inadmissible under Federal Rule of Evidence 404(b), 402 and 403. *Id.* at 4-5. Defendants do not develop meaningful argument nor attach any investigative logs to support exclusion under the Federal Rules of Evidence.

Because defendants do not develop a record, the Court should reserve ruling until the defendants identify specific evidence for exclusion. *See Simmons*, 2017 WL 3704884, at \*5 (reserving ruling on a civilian complaint of police misconduct).

## 6. Bar Any Testimony, Evidence, Argument, or Comments Regarding Other Events Concerning Allegations of Police Misconduct in the Media and Police Shootings

Defendants request to bar evidence of the "fatal shootings of Laquan McDonald, Cedric Chatman, Christian Green, and Lamar Harris." ECF No. 319 at 7. Plaintiff agrees to not introduce evidence concerning these shootings,

## 7. Bar Any Testimony, Evidence, Argument or Comments Regarding Appointment of New Superintendent and Other Police Officials or Departments to Investigate Allegations of Police Misconduct

Plaintiff has no intent to argue the reason behind a new police Superintendent or other officials to investigate police misconduct.

However, plaintiff has identified Garry McCarthy and Eddie Johnson as witnesses. It will be necessary to introduce evidence that Eddie Johnson assumed the position of Superintendent after Garry McCarthy. Along similar lines, two IPRA Chiefs participated in the investigation of plaintiff's complaint and it will be obvious that Scott Ando was replaced by Sharon Fairley as IPRA Chief.

## 8. Bar Argument the City Should be Punished or the Jury Should Send Message to City with their Verdict

Defendants argue that plaintiff "should not be permitted to argue that the City of Chicago should be punished or that the jury should send a message to the City by their verdict." ECF No. 319 at 9. Plaintiff agrees that any argument that the jury should punish

the City would be improper. As for argument the jury should "send a message to the City," the Court should adopt the same ruling as the district judge in *Simmons*: plaintiff "may properly ask the jury to send a message by awarding full compensatory damages against the City. *See Christmas v. City of Chicago*, 691 F.Supp.2d 811, 820 (N.D.Ill. 2010)." 2017 WL 3704844, at *6.

## 9. Bar Mention of Indemnity

Defendants ask the Court to bar evidence that the defendant officers "may be indemnified against any judgment in this action." ECF No. 319 at 9. Assuming defendants disavow any intention to offer evidence or make argument regarding police officers' modest pay, financial hardship, onerousness of a verdict, or other similar arguments, plaintiff will agree to exclude evidence or indemnification of the individual defendants by the City for compensatory damages. *See Simmons*, 2017 WL 3704844, at *6.

## 10. Bar Any Mention that Defense Lawyers Work on Behalf of the City

Plaintiff agrees to not refer to the officers' lawyers as working for the City.

## 11. Bar Any Implication that CPD Personnel Are Being Paid by City to Appear at Trial

Plaintiff agrees to not argue the police personnel are being paid their salary to testify, however, plaintiff requests permission to "bring out evidence regarding training of police officers on testifying in court, the frequency of their testimony, and the fact that it is a routine part of their jobs." *Simmons*, 2017 WL 3704844, at *6.

**12.  Bar Evidence Plaintiff has Waited a Long Time for Her Day in Court**

Plaintiff agrees to not argue she has waited a long time for her day in court so long as defendants do not present argument or inference regarding the delay between the underlying incident and the trial.

**13.  Bar Any Lay Opinion Testimony Regarding Plaintiff's Alleged Injuries**

Defendants ask the Court to bar "lay witness testimony that Plaintiff may be suffering from any long-lasting or permanent physical or emotional injuries due to her interaction with the Defendant Officers." ECF No. 319 at 12. Defendants argue Rule 701 supports this ruling.

The Court should follow the ruling in *Simmons*, "Plaintiffs (and perhaps other witnesses) may properly testify regarding plaintiffs' symptoms, when they began, their duration, and so on, and they may properly testify regarding their own perceptions. Lay witnesses, however, may not self-diagnose and may not testify what was communicated to them by medical personnel regarding their conditions or any diagnosis." *Simmons*, 2017 WL 3704844 *6.

**14.  Bar Testimony, Evidence, or Argument Regarding Outcome of Rita King's Criminal Charges**

Plaintiff agrees not to introduce evidence regarding the outcome of her criminal charges.

**15.  Bar Testimony, Evidence or Argument Regarding Negative Encounters with other Police Officers**

Plaintiff agrees she will not offer testimony about negative encounters with other police officers who are not defendants in this case.

**16.  Bar Testimony, Evidence, or Argument Concerning CR # 1044664 or its Findings and/or Penalty Recommendations, Command Chanel Review, Non-Occurrence [sic] [The City, subject to bifurcation, does not join]**

The individual defendants seek to bar evidence of CR # 1044664. ECF No. 319 at 14. Defendants make this motion in limine without attaching any supporting information regarding this CR. Moreover, defendants do not cite any rule or case in support of excluding this evidence and merely argue for exclusion because "[t]his disciplinary matter has not been brought to a close." ECF No. 319 at 15.

Defendants offer no evidence to support their argument "that there has been no final outcome" for this CR. ECF No. 319 at 15.

CR # 1044664 was initiated by plaintiff King in April 2011. This CR is critical for plaintiff to satisfy her burden under *Monell* against the City of Chicago. Accordingly, the Court should deny this undeveloped and unsupported motion in limine.

**17.  Bar Testimony, Evidence, or Argument Regarding *People v. Evans* criminal court proceedings**

Plaintiff agrees to not introduce evidence of the *People v. Evans* criminal court proceedings

**18.  Bar Any Comment in Opening Statement that Any Chicago Police Officers Attempted to Cover Up or Conceal Misconduct in this Case**

Defendants seek to exclude evidence or argument that the defendants and other police officers "attempted to cover up and/or conceal Defendants' alleged misconduct." ECF No. 319 at 15. The Court should reject this motion because the evidence will show

the individual defendants covered up for each other in April 2011 when plaintiff was detained in the 6th District.

Plaintiff alleges the individual defendants are biased towards each other and did not document the use of force against plaintiff. In addition, plaintiff alleges the disciplinary investigation, initiated by plaintiff King, further acted to cover up the excessive force by the individual defendants because, after more than 6 years, there has been no discipline despite an agreement by IPRA and the CPD that Evans, Sutton and Clifford participated in the use of unreasonable force against plaintiff.

This is certainly proper in opening argument. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United Stated v. Abel*, 469 U.S. 45, 52 (1984); *Maldonado v. Stinar*, No. 08 C 1954, 2010 WL 3075680, at *4 (Aug. 5, 2010) (allowing evidence of bias among particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall"). Accordingly the Court should deny this motion in limine.

## 19.  Bar Reference to Unidentified "Official Policymaker" or "Final Policymaker" of the City

The Court should defer on this ruling until after preliminary jury instructions are approved. The *Simmons* court followed this procedure based on an identical motion by the City of Chicago. *See Simmons*, 2017 WL 3704844, at *9 ("The Court will determine as part of the process of preparing preliminary jury instructions how the jury will be

instructed on who is or who are policymakers for the City for purposes of the *Monell* claims.")

## 20. Bar Mention of Defendant Evans' Other Lawsuits Against the City of Chicago and City of Chicago Employees

Defendants seek to exclude Glenn Evans' other lawsuits against the City of Chicago. ECF No. 319 at 17. Defendants request to exclude this evidence, yet do not attach these complaints as an exhibit to their motion.

The Court should deny this motion. In *Evans v. City of Chicago*, No. 16 C 7665, defendant Evans alleged the City of Chicago, IPRA, and various employees of IPRA violated his rights as a result of the City's policy and procedure to investigate misconduct including an allegation that high ranking employees of the City pressured him to retire, Exhibit 1 ¶¶ 124-132, and that the IPRA investigation into plaintiff's complaint was reopened "in order to retaliate against Evans for prevailing in the Williams matter, for filing a complaint with OIG, for declining to voluntarily retire from CPD, and to create the appearance of being tough on 'dirty' policemen." *Id.* at ¶ 140.

Defendant Evans' complaint is a statement by a party and thus admissible under Rule 801(d)(2). And without doubt, this statement is relevant to the claims at issue at trial.

## 21. Bar Plaintiff From Personally Calling Superintendent Johnson at Trial and to Use Deposition Transcript Instead

Defendants argue that Superintendent Johnson should not be called at trial under the "apex doctrine" and that instead his deposition transcript should be used. ECF No. 319 at 17-20. In support of this motion, defendants cite various district court decisions

primarily relating to high level officials being produced for depositions. ECF No. 319 at 18-19.

Superintendent Johnson has personal knowledge about Glenn Evans and the individual defendants; he was the Commander of the 6th District in April 2011 when plaintiff King alleges excessive force was used on her. In addition, Superintendent Johnson has firsthand knowledge of the facts and circumstances of this case because he reviewed the IPRA investigation and determined Evans, Sutton, and Clifford participated in the use of unreasonable force against plaintiff King.

Defendants fail to properly support their motion that "as evidenced by his deposition taken by Plaintiff's counsel, the Superintendent's knowledge about the underlying incident is nil" or that "the information Plaintiff could possibly gain from calling the Superintendent for live testimony can be obtained through the witnesses listed in the parties' Pretrial Order." ECF No. 319 at 19.

In addition, plaintiff anticipates calling Superintendent Johnson at trial to lay a foundation for the Task Force Report and the DOJ Report. Accordingly, the Court should deny this motion.

## 22.  Bar Reference to Generalized "Code of Silence" and Mayor Emanuel's Comments Relating Thereto

Plaintiff alleges the City of Chicago has a policy or widespread equivalent practice of failing to discipline police officers who use excessive force. This claim will proceed to trial because the Court denied the City of Chicago's motion to bifurcate. ECF No. 290, Minute entry.

Defendants seek an order barring evidence of a "code of silence," including the Mayor's comments about this evidence because, they say, it is not relevant or that Rule 403 supports exclusion. ECF No. 319 at 20-21.

As for defendants' concern about the term "code of silence," ECF No. 319 at 20, plaintiff agrees that when using this term she will link it to the *Monell* claim at issue in this case, namely whether the City fails to discipline and/or investigate officers who use excessive force.

As for defendants' second concern, the Mayor's statement about the application of a code of silence and police officers concealing misconduct, ECF No. 319 at 21, the Court should deny this motion. Indeed, the Mayor told the City Council that police officers had a "tendency to ignore, deny or in some cases cover up the bad actions of a colleague or colleague." Exhibit 2, Proposed Stipulation in *Spalding v. City of Chicago*, No. 12 C 8777. This statement is admissible under Rule 801(d)(2) and is relevant to plaintiff's *Monell* claim and the application of the evidence in this case.

Accordingly, the Court should deny this motion in limine.

## 23. Bar Plaintiff from Eliciting Rule 30(b)(6) Testimony or Impeaching 30(b)(6) Witnesses Based on Topics Which They Were Not Designated to Testify

Defendants request a ruling in advance of trial to prohibit plaintiff from eliciting Rule 30(b)(6) testimony "that is outside the topics for which the witnesses are designated." ECF No. 319 at 22. Defendants do not explain the application of this motion to the specific witnesses or areas of Rule 30(b)(6) examination.

Regardless, plaintiff will not seek to elicit Rule 30(b)(6) examination from improper witnesses.

## 24. Bar Evidence or Reference to *Spalding,* Its Proposed Stipulation, *State of Illinois* and Any Consent Decree Negotiations, and Any Other *Monell* Claims Against the City

In *Spalding v. City of Chicago¸* 12 C 8777, the City of Chicago proposed a stipulation relating to the Mayor's address to the City Council that police officers have had a "tendency to ignore, deny or in some cases cover up the bad actions of a colleague or colleagues." ECF No. 319 at 22; Exhibit 2, *Spalding v. City of Chicago*, 12 C 8777 Stipulation. Defendants argue any evidence about this stipulation is not relevant or should be exclude under Rule 403.

The Court should deny this request for many of the reasons previously advanced; this statement is relevant to the *Monell* claim, the record supports an inference the individual defendants concealed misconduct in this case because the use of force was not documented, and the City, although it agreed Evans, Sutton, and Clifford should be disciplined, did not punish them for participating in the use of force on plaintiff.

Defendants also argue that any evidence about *State of Illinois v. City of Chicago*, 17 C 6260 should be barred. ECF No. 319 at 23. At this juncture, plaintiff agrees to not introduce evidence of this lawsuit unless defendants open the door.

## 25. Motion to Bifurcate Plaintiff's Monell Claim for Trial

Defendants make a third request to bifurcate plaintiff's *Monell* claim. This motion was denied without prejudice by the Magistrate Judge on July 17, 2015. ECF No. 132, Statement.

On April 28, 2017, this Court denied defendants' second motion to bifurcate. ECF No. 290, Minute entry. The defendants' third motion for bifurcation presents no new or different arguments. The Court should not repeat its work for a third time and should summerly deny this motion for the same reasons previously advanced by plaintiff. *See* ECF No. 261, Plaintiff's Response In Opposition To Bifurcation.

## 26.  Bar Plaintiff from Calling Mayor Emanuel at Trial

During the pretrial preparation, counsel offered to enter a stipulation in lieu of calling Mayor Emanuel to testify at trial regarding his acknowledgment there was a practice in the Police Department to conceal misconduct. This proposal was memorialized in an email dated 8/25/2017 by attorney Patrick Morrissey attached as Exhibit 3.

Defendants would not agree to the proposal. While defendants are correct plaintiff never disclosed Mayor Emanuel, this was harmless and falls within the exception provided by Rule 37(c)(1); it was "substantially justified or is harmless."

Discovery, after many extensions, formally closed on January 25, 2016.[1] ECF No. 233, Order at 1.

Around the time discovery closed, many recent developments occurred relating to acknowledgement by the City of a pattern or practice to cover up misconduct. For example, on December 9, 2015, the Mayor provided comments to the City Council that individual police officers have had a "tendency to ignore, deny or in some cases cover up

---

[1] The Magistrate Judge did reopen discovery in an order dated August 9, 2016 for the limited purpose to depose Superintendent Johnson based on newly disclosed communications between Superintendent Johnson and IPRA about this case. ECF No. 233, Order at 1.

the bad actions of a colleague or colleagues." Exhibit 2, Proposed Stipulation by the City in *Spalding v. City of Chicago*, No. 12 C 8777. Moreover, in April 2016, the Police Accountability Task Force, published findings about the inadequate disciplinary procedures in the CPD. ECF No. 260-2 at 133-322**.** This report was followed by the Department of Justice report in January 2017 that corroborated many of the Police Accountability Task Force findings. ECF No. 270-1 at 2-165.

Moreover, defendants are wrong plaintiff has not established a justification to call the Mayor. ECF No. 319 at 27-28. The Mayor made a public statement about the relevant *Monell* policy at issue in this case. During a meet and confer, plaintiff offered to enter a stipulation similar to *Spalding*. Exhibit 3, P.Morrissey email dated 8/25/2017. The City would not agree to this proposal and thus the Mayor's testimony is necessary to establish.

In addition, the Mayor's testimony may be necessary to lay a foundation for the DOJ report and the Task Force Report.

## 27.   Bar Evidence of the Recent DOJ Investigation and Report

Plaintiff intends to use portions of the recent U.S. Department of Justice Report into the Chicago Police Department and the Independent Police Review Authority to support her *Monell*, specifically sections concerning adequacy of investigation, discipline, and supervision of the use-of-force complaints, and the existence of a 'code of silence.' Defendants argue that the report is inadmissible hearsay and alternatively that it should be excluded under Rule 403. For many of the same reasons explained in *Simmons*, the Court should deny this motion.

First, the hearsay objection should be overruled for the same reasons as *Simmons*:

> The report contains factual findings resulting from a legally authorized investigation and is therefore admissible under Federal Rule of Evidence 803(8)(A)(ii) absent a finding of lack of trustworthiness, which defendants have not attempted to show. *See Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016). The Rule's reference to 'factual findings' includes 'an evaluative report combining both opinions and conclusions,' and a report that combines third-party statements with an investigator's observations and conclusions also qualifies. *Id.*

*Simmons*, 2017 WL 3704844, at *8.

Second, the Court should overrule defendants' Rule 403 objection for many of the same reasons explained in *Simmons*. In *Simmons*, the Court explained:

> The report is, no doubt, prejudicial, but the Rule requires a showing of *unfair* prejudice that significantly outweighs the probative value of the evidence. Defendants have failed to show any unfair prejudice with regard to points that are directly at issue in this case, including plaintiffs' *Monell*-based contentions regarding failure to supervise, investigate, and discipline allegations of excessive force . . . And the report has significant probative value. *See Daniels*, 833 F.3d at 731 (similar findings in a DOJ report regarding the Cook County Jail 'go a long way toward meeting a plaintiff's burden of proving an unconstitutional custom, policy, or practice under *Monell*.').

*Simmons*, 2017 WL 3704844, at *8. The same factors tip in plaintiff's factor here and the Court should therefore allow into evidence limited portions of the report.

## 28.  Bar Evidence or Reference to the Police Accountability Task Force Report

Defendants seek to bar the Police Accountability Task Force Report under Rule 803(8) and Rule 403. ECF No. 319 at 45-46. Defendants also argue the report is inadmissible as a subsequent remedial measure. *Id.* at 47. The Court should overrule these arguments for many of the same reasons as *Simmons*. 2017 WL 3704844, at * 8.

Plaintiff seeks to introduce the report for many of the same reasons as the plaintiffs in *Simmons* "regarding an evaluation of inadequacies in the police department's disciplinary system." *Simmons*, 2017 WL 3704884, at *8.

In *Simmons*, the Court considered many of the defendants' arguments to find the report is admissible:

> First of all, the report is not hearsay; it qualifies as a statement of an authorized person or agent of an opposing party (the City) under Federal Rule of Evidence 810(d)(2)(C) & (D). Second, even if that were not so, the report is admissible under Rule 803(8)(A)(iii), just like the DOJ report, as the report includes factual findings made by a public office resulting from a legally authorized investigation. The fact that the task force was a public body vested with authority to investigate the issues under consideration, which it was. And finally, the Court overrules defendants' Rule 403 objection for the reasons described with regard to the DOJ report.

*Simmons*, 2017 WL 3704844, at *8.

For many of the same reasons, the Court should deny this motion in limine.

## 29. Bar Testimony, Evidence, or Argument that Defendant Evans Previously Asserted the Fifth Amendment Privilege During a Deposition

Plaintiff does not object to this motion in limine.

Respectfully submitted,

/s/ Patrick W. Morrissey
ARDC No. 6309730
Thomas G. Morrissey, Ltd.
10150 S. Western Ave., Suite Rear
Chicago, Illinois 60643
patrickmorrissey1920@gmail.com
(773) 233-7900

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| GLENN EVANS, an individual, | ) | |
| | ) | |
| | ) | No.  16-cv-7665 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | |
| corporation; MATRICE CAMPBELL, an | ) | |
| individual; VINCENT JONES, an | ) | |
| individual; SCOTT ANDO, an individual; | ) | |
| SHARON FAIRLEY, an individual; | ) | **Jury Trial Demanded.** |
| ANDREA STOUTENBOROUGH, an | ) | |
| individual; JAMES LUKAS, an individual; | ) | |
| ANTHONY FINNELL, an individual; | ) | |
| MARIA OLVERA, an individual; SHERRY | ) | |
| DAUN, an individual; WILLIAM CARLOS | ) | |
| WEEDEN, an individual; LINDA | ) | |
| FRANKO, an individual; SHANNON | ) | |
| HAYES, an individual; WBEZ, a | ) | |
| corporation; and STEVEN "CHIP" | ) | |
| MITCHELL, an individual, | ) | |

Defendants.

## COMPLAINT

**NOW COMES** Plaintiff, Glenn Evans, by and through his attorney, Victor P.

Henderson, and complains of Defendants, the City of Chicago, a municipal

corporation, Matrice Campbell, an individual, Vincent Jones, an individual, Scott

Ando, an individual, Sharon Fairley, an individual, Andrea Stoutenborough, an

individual, James Lukas, an individual, Anthony Finnell, an individual, Maria

1

Plaintiff's Exhibit 1 Page 1

Olvera, an individual, Sherry Daun, an individual, William Carlos Weeden, an individual, WBEZ, a corporation, and Chip Mitchell, an individual, as follows:

## NATURE OF CASE

1.  This is an action for monetary damages brought pursuant to 42 U.S.C. §1983 and the laws of the State of Illinois.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1367, because Plaintiff asserts claims that arise under the Constitution and laws of the United States, and other claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §1391(b), because the facts that gave rise to the claims occurred within the Northern District of Illinois.

## THE PARTIES

4.  At all relevant times, Plaintiff Glenn Evans ("Evans") was a resident of the Northern District of Illinois and an employee of the City of Chicago as a Chicago Police Officer.

5.  At all relevant times, Defendant Matrice Campbell ("Campbell") worked for the Independent Police Review Authority ("IPRA") and acted in the course and scope of her employment with the City of Chicago as an IPRA investigator.

2

6.    At all relevant times, Defendant Vincent Jones ("Jones") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as an IPRA investigator.

7.    At all relevant times, Defendant Scott Ando ("Ando") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as Chief Administrator of IPRA.

8.    At all relevant times, Defendant Sharon Fairley ("Fairley") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as Chief Administrator of IPRA.

9.    At all relevant times, Defendant Andrea Stoutenborough ("Stoutenborough") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as Coordinator of Investigations for IPRA.

10.    At all relevant times, Defendant James Lukas ("Lukas") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as an IPRA investigator.

11.    At all relevant times, Defendant Anthony Finnell ("Finnell") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as an IPRA investigator.

12.    At all relevant times, Defendant Maria Olvera ("Olvera") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA supervising investigator.

3

Plaintiff's Exhibit 1 Page 3

13.     At all relevant times, Defendant Sherry Daun ("Daun") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA supervising investigator.

14.     At all relevant times, Defendant William Carlos Weeden ("Weeden") worked for IPRA and acted in the course and scope of his employment with the City of Chicago as Deputy Chief Administrator of IPRA.

15.     At all relevant times, Defendant Linda Franko ("Franko") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA investigator.

16.     At all relevant times, Defendant Shannon Hayes ("Hayes") worked for IPRA and acted in the course and scope of her employment with the City of Chicago as an IPRA investigator.

17.     At all relevant times, Defendant City of Chicago ("City") was a municipal corporation incorporated under the laws of the State of Illinois.

18.     The City operates IPRA and is the IPRA Defendants' principal employer.

19.     At all relevant times, Defendant WBEZ was a noncommercial public radio station affiliated with National Public Radio.

20.     At all relevant times, Defendant Steven "Chip" Mitchell ("Mitchell") was an investigative reporter for WBEZ.

4

## FACTS

21.    Evans has been employed with the City of Chicago as a sworn law enforcement officer since 1986 or for thirty years.

22.    Like many other officers with his level of seniority, Evans has, from time to time, had tense encounters with city residents and others, including Rita King and Rickey Williams.

23.    Evans was promoted to the position of commander in August 2012.

24.    To date, Evans' Complimentary History with the Chicago Police Department includes 177 awards and commendations.

25.    Over the past few years, IPRA has faced public scrutiny in light of heightened media coverage of police misconduct in Chicago and elsewhere.

26.    The controversy over IPRA's practices culminated in Mayor Rahm Emanuel's May 2016 announcement of plans to abolish IPRA and replace it with a civilian agency.

### Campbell's Animosity Toward Evans

27.    In 1999, Campbell was employed by the City in the administrative office of the Second District of the Chicago Police Department.

28.    At the time, Evans held the rank of sergeant.

29.    In or around 1999, Evans initiated a complaint register against Campbell for active insubordination.

30.    As a result of Evans' complaint, Campbell was suspended.

31.    Campbell has harbored animosity toward Evans ever since.

5

### The Rita King Matter

32.    On or about April 10, 2011, Rita King ("King") was arrested by the Chicago Police Department after an alleged domestic dispute with her boyfriend.

33.    King was taken to the Sixth District.

34.    King refused to be fingerprinted or photographed.

35.    At the time, Evans was on duty as Watch Commander for the Sixth District.

36.    At the request of other officers, Evans attempted to assist in processing King.

37.    Evans attempted to escort King to the photograph and fingerprint machines.

38.    Evans also touched King in an attempt to prevent King from spitting on him.

39.    At no time did Evans use excessive force against King, nor did he threaten her.

40.    King later sued Evans in Case No. 13-cv-01937 in the United States District Court in the Northern District of Illinois.

41.    King alleges, among other things, that Evans pressed his hand against her nose for an extended period of time.

42.    Evans denies the allegations.

43.    The King lawsuit is pending.

44.    IPRA investigated the King matter.

6

45.    On or about November 7, 2013, Evans gave a statement to IPRA regarding the King matter.

46.    IPRA recommended that Evans be punished with a 14 day suspension.

47.    The Chicago Police Department declined to discipline Evans.

### Rickey Williams Fails To Identify Evans In A Photo Array

48.    On or around January 30, 2013, Evans and other police officers arrested Rickey Williams ("Williams") for reckless conduct.

49.    A few days later, Williams filed a complaint with IPRA, alleging that during his arrest, Evans shoved a gun down his throat with his left hand and held a taser to his groin with his right hand.

50.    Evans never shoved a gun down Williams' throat.

51.    Evans was not carrying a taser on the day of the Williams arrest.

52.    Campbell was working for IPRA at the time.

53.    On or about February 5, 2013, Jones was assigned to investigate the Williams matter.

54.    Jones had a conflict of interest relating to Evans because he and Evans had prior adversarial contact during other IPRA investigations.

55.    In spite of this, Jones executed a sworn statement that he did not have a conflict of interest.

56.    In or around May 2014, Williams was incarcerated at Pontiac Correctional Center ("Pontiac") for charges unrelated to his arrest by Evans.

7

57.    On or about May 14, 2014, Jones, Cook County Assistant State's Attorney Lauren Freeman ("Freeman"), and Campbell traveled to Pontiac to meet Williams.

58.    Campbell was supposed to have the day off, and was not assigned to work, on May 14, 2014.

59.    Campbell never disclosed to IPRA that she had been previously disciplined by Evans.

60.    Jones and Campbell showed Williams a series of photos to identify the officers involved in his arrest on January 30, 2013.

61.    Williams identified a person in a "filler" photo who was not present during his arrest.

62.    A filler photo is a photograph of someone who was not involved in an incident, but shown to a witness to ensure that he or she identifies the proper person.

63.    Williams also identified other officers who were not present during his arrest.

64.    Williams failed to identify Evans in any photo.

65.    In fact, the only way Williams ever identified Evans was by name and never by face.

66.    Williams admitted that he got Evans' name by searching the Internet with his girlfriend who used to be a friend of Evans.

8

### IPRA Botches The Williams Investigation, Including The Processing Of The DNA On Evans' Gun

67. On February 4, 2013, Ando circulated a memo to Daun, Lukas, and Stoutenborough, instructing them to confirm whether Evans is left or right handed, because Williams alleged that Evans used his left hand to shove the gun down his throat.

68. Olvera also noted that it was important to determine whether Evans is left or right handed.

69. IPRA never ascertained whether Evans is left or right handed.

70. Ando also instructed the IPRA investigators to interview the other police officers present at the scene of Williams' arrest.

71. At the time of Evans' criminal trial in December 2014, no police officers had been interviewed by IPRA, despite the investigation being open for 22 months.

72. IPRA investigators also requested that Evans' gun be swabbed for DNA.

73. A day and a half after Williams' arrest, Evans' gun was swabbed.

74. CPD Evidence Technician Kelly Comiskey ("Comiskey") was instructed to swab the outside of Evans' gun.

75. No one at IPRA or otherwise instructed Comiskey to swab different parts of the gun separately, e.g., to swab the barrel of the gun that Williams alleged

9

Plaintiff's Exhibit 1 Page 9

was in his mouth separately from the parts of the gun that he did not allege were in his mouth.

76.    Thus, Comiskey used the same swab for the entire gun.

77.    The inside of Evans' gun was never swabbed.

78.    Making matters worse, Evans' gun was never tested for saliva or blood.

79.    The DNA results revealed the presence of Williams' DNA.

80.    Because of the manner in which the gun was swabbed, it was and is impossible to determine where on the gun Williams' DNA was found.

81.    Because of the critical DNA and other tests that were overlooked, it is also impossible to determine from which part of Williams' body the DNA came.

82.    Complicating matters even more, the Illinois State Police Technician performing the DNA tests asked Jones if she could consume the sample.

83.    To "consume" a sample means that it is used in its entirety and that no further tests can be performed.

84.    Jones consented to the sample being consumed, forever destroying the sample.

85.    Jones later admitted that he did not know what it meant to "consume" a sample in the context of a DNA test.

86.    Thus, no follow-up DNA testing can ever be performed.

10

### The Leak To The Media

87.     Certain documents in IPRA's file, including, but not limited to, DNA test results and Ando's recommendation that Evans be removed from active duty, are confidential, *especially while an investigation is pending.*

88.     Campbell violated her duty of confidentiality and gave the DNA test results and other confidential materials from the Williams IPRA file to WBEZ reporter Chip Mitchell.

89.     In doing so, Campbell violated IPRA's rules and regulations.

90.     Campbell intentionally turned over these documents in order to harm Evans.

91.     On or about July 30, 2014, after receiving these confidential documents, Mitchell contacted Evans for an interview.

92.     That same day, Mitchell told Evans that Campbell gave him these confidential documents and spoke with him about the investigation of Evans.

93.     After Ando learned about the leak, he reported the breach to the Office Of the Inspector General ("OIG") and also to the Federal Bureau of Investigation ("FBI").

94.     In his complaint to OIG, Ando stated that the person who leaked this information "has obstructed an official investigation and can be charged with a felony."

95.     OIG opened an investigation into the leak.

96.     To date, Evans does not know the status of the investigation.

11

Plaintiff's Exhibit 1 Page 11

### Chip Mitchell's Series Of Misleading Exposés Against Evans

97.     On July 31, 2014, WBEZ broke a story entitled, "CPD leaves commander in post despite assault allegation, DNA match."

98.     Mitchell then began a crusade against Evans by publishing a series of stories in print and on-air about allegations of misconduct.

99.     These articles damaged Evans' reputation.

100.    Other media outlets then picked up these stories.

101.    One article dated August 5, 2014, stated that Evans had more excessive force complaints than any other police officer between 1988 and 2008.

102.    This statement is false.

103.    These articles led to Evans being criminally charged in the Williams matter.

### The Cook County State's Attorney Is Forced To Indict Evans

104.    Mitchell's biography on the WBEZ website boasts about his "2014 series of exposés that led to a felony indictment of Chicago's most celebrated police commander."

105.    Because of Mitchell's self-proclaimed "exposé," the allegations against Evans were spotlighted in the media throughout the summer of 2014.

106.    On July 17, 2014, Eric Garner was strangled to death by a New York City Police Officer.

107.    On August 9, 2014 Michael Brown was fatally shot by a police officer in Ferguson, Missouri.

12

108.   On August 28, 2014, Evans' FOID card was revoked due to the pending investigation of the Williams matter.

109.   On October 20, 2014, Laquan McDonald was fatally shot by a Chicago Police Officer.

110.   Chicago Mayor Rahm Emanuel ("Emanuel") was up for re-election in April 2015.

111.   Anita Alvarez ("Alvarez") was facing the upcoming 2016 Democratic Primary Election for retention as Cook County State's Attorney.

112.   On or about September 17, 2014, due to the political pressures facing Emanuel and Alvarez in light of police misconduct in the media, Evans was criminally indicted.

113.   Evans was charged with two counts of aggravated battery with a deadly weapon and seven counts of official misconduct, all felonies.

114.   Evans was placed on no-pay status in mid-October 2014.

**Evans Complains To The Office Of The Inspector General**

115.   On or about May 19, 2015, Evans filed a complaint with OIG about IPRA.

116.   Among other things, Evans complained about IPRA leaking confidential information to the media and investigators Jones and Campbell being allowed to participate in investigations against him despite conflicts of interest.

117.   Upon information and belief, this investigation is still pending.

13

Plaintiff's Exhibit 1 Page 13

118.    In or around June 2015, Campbell was fired from IPRA on allegations of perjury, unrelated to Evans.

### The Sweeping Acquittal By The Circuit Court Of Cook County

119.    The Honorable Judge Diane G. Cannon ("Cannon") presided over Evans' criminal proceeding.

120.    A bench trial took place on December 8, 9, and 10, 2015.

121.    On December 14, 2015, the Circuit Court found Evans not guilty of all charges.

122.    In so finding, the Circuit Court noted: the inconsistencies in Williams' story of events; his inability to identify Evans in the photo array; the impossibility of Williams' version of the story in light of physical evidence (or lack thereof); that the DNA did not determine that Evans was guilty; and, IPRA's botching their investigation. *See*, Exhibit A.

123.    Evans' FOID card was reinstated in or around February 2016.

### Evans Is Pressured To Retire

124.    On or around April 25, 2016, Evans returned to work with the Chicago Police Department ("CPD") after using his compensatory time.

125.    Evans was assigned, against his wishes, to the Medical Section.

126.    CPD denied Evans back pay for his time away from duty while his criminal case was pending.

127.    Soon after he returned to work, Evans received up to 30 phone calls from his superiors pressuring him to retire.

14

Plaintiff's Exhibit 1 Page 14

128. Evans was told that Fairley was pushing to federally charge him if he did not voluntarily retire.

129. Senior Police Command Staff personally delivered retirement documents to Evans.

130. Senior Police Command Staff threatened that Evans would be fired if he did not voluntarily retire.

131. Clearly, IPRA and others wanted to force Evans to leave CPD and then publicly take credit for his retirement.

132. Evans refused to retire.

**The Rita King Investigation Is Inexplicably Re-Opened**

133. On or about July 5, 2016, Evans was given a notification that Franko and Hayes alleged that he testified falsely at his November 7, 2013 interview in the Rita King matter.

134. Evans was not informed, and still does not know, the basis for this accusation.

135. This accusation was made in spite of the City being given a report by a widely respected physician on or about October 12, 2015 regarding the injuries claimed by Rita King.

136. According to the physician, to wit:

> With a reasonable degree of medical certainty there is no evidence of any injury to Ms. King on April 10, 2011 that could have caused a 'blowout' fracture of her orbit or the multiple fractures of the nasal bones as noted on CT. These CT findings do not appear to be acute or a recent

15

injury given the lack of significant soft tissue edema of the nose or contusion and swelling of the left orbit. In addition there are no peripheral soft tissue changes around the blowout fracture site on CT. Any physical contact that Ms. King did have did not aggravate any pre-existing injury that was noted on the CT.

(Emphasis added.)

137. Evans was informed that IPRA was seeking to enhance his recommended punishment in the King matter from 14 days to termination.

138. Evans was ordered to appear for a second interview regarding the Rita King matter.

139. This interview has yet to occur.

140. IPRA is persisting in its investigation of the King matter in order to retaliate against Evans for prevailing in the Williams matter, for filing a complaint with OIG, for declining to voluntarily retire from CPD, and to create the appearance of being tough on "dirty" policemen.

**COUNT I**
**RETALIATORY INDUCEMENT TO PROSECUTE**
**(Matrice Campbell)**

141. Each of the foregoing paragraphs is incorporated as if restated fully herein.

142. Evans' 1999 discipline of Campbell was an exercise of his free speech and one of the duties of his employment.

143. Campbell harbored long-standing animus against Evans for disciplining her.

16

**Plaintiff's Exhibit 1 Page 16**

144. Campbell, through leaking information to Chip Mitchell, knowingly and intentionally began the process of the Cook County State's Attorney criminally charging Evans.

145. There was no probable cause to prosecute Evans for misconduct against Rickey Williams, because the IPRA investigation was botched and incomplete.

146. Evans would not have been charged with aggravated battery and official misconduct but/for Campbell's animus, because she leaked information to the media that directly induced the Cook County State's Attorney to criminally charge him.

147. Evans was found not guilty at trial on December 14, 2015.

148. As a result of Campbell's retaliatory inducement to prosecute, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of compensation time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and extreme emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant.

B. Award compensatory damages in favor of Plaintiff and against Defendant.

C. Award punitive damages in favor of Plaintiff and against Defendant.

17

D. Award attorneys' fees and costs in favor of Plaintiff and against Defendant.

E. Award such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

### COUNT II
### MALICIOUS PROSECUTION
### (Illinois State Law Claim)
### (Matrice Campbell, Vincent Jones, Scott Ando, Andrea Stoutenborough, James Lukas, Anthony Finnell, Maria Olvera, Sherry Daun, and William Weeden)

149. Each of the foregoing paragraphs is incorporated as if restated fully herein.

150. The aforementioned defendants commenced criminal proceedings against Evans by referring IPRA's investigation to the Cook County State's Attorney to criminally charge him with aggravated battery and official misconduct.

151. The aforementioned defendants did not have probable cause to believe that Evans committed these crimes, because IPRA's investigation was botched and incomplete.

152. The aforementioned defendants acted with malice or reckless indifference against Evans because of past adversarial contact with Evans and/or to further their own careers and save face for IPRA.

153. On December 14, 2015, Evans was found not guilty at trial.

18

154.    As a result of Defendants' misconduct, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of compensation time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of the Plaintiff and against Defendants.

B.  Award compensatory damages in favor of Plaintiff and against Defendants.

C.  Award punitive damages in favor of Plaintiff and against Defendants.

D.  Award such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

### COUNT III
### FALSE LIGHT
### (Illinois State Law Claim)
### (Matrice Campbell, WBEZ, and Chip Mitchell)

155.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

156.    As a result of Campbell leaking confidential and incomplete information to the press, Evans was placed in a false light before the public.

19

Plaintiff's Exhibit 1 Page 19

157.   Mitchell and WBEZ published this confidential and incomplete information in print and on the radio, filling in the blanks with Mitchell's own version of the facts.

158.   These news stories placed Evans in a false light before the public.

159.   A reasonable person would find the false light in which Evans was placed to be highly offensive.

160.   Campbell acted with malice and knowledge that the information she leaked to the press was privileged and did not tell the whole story, and that the publication of this information would harm Evans' reputation and subject him to criminal charges.

161.   Mitchell and WBEZ acted willfully, wantonly, recklessly, maliciously, with calculations to harm Evans' character and reputation and solely to advance Mitchell's own career, knowing that they did not have the complete file when they published certain information about the investigation.

162.   As a result of Campbell's, Mitchell's, and WBEZ's misconduct, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of compensatory time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A.  Enter judgment in favor of the Plaintiff and against Defendants.

Plaintiff's Exhibit 1 Page 20

B. Award compensatory damages in favor of Plaintiff and against Defendants.

C. Award punitive damages in favor of Plaintiff and against Defendants.

D. Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Illinois State Law Claim)
### (All defendants)

163. Each of the foregoing paragraphs is incorporated as if restated fully herein.

164. Evans had a reasonable expectancy of a valid business relationship with the Chicago Police Department in that he expected to have continued employment, promotions, and pay raises throughout the remainder of his career.

165. Defendants knew about Evans' expectancy to remain with, and rise through the ranks of, the Chicago Police Department.

166. Defendants intentionally interfered with Evans' expectancy and prevented him from obtaining seniority, rank, and pay status with the Chicago Police Department by destroying his reputation, subjecting him to continued delayed and unwarranted investigations, and causing criminal charges to be brought against him.

21

167. Because of this interference, Evans suffered damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of comp time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court:

A. Enter judgment in favor of the Plaintiff and against Defendants.

B. Award compensatory damages in favor of Plaintiff and against Defendants.

C. Award punitive damages in favor of Plaintiff and against Defendants.

D. Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT V
## RETALIATORY PROSECUTION
### (Sharon Fairley, Linda Franko, and Shannon Hayes)

168. Each of the foregoing paragraphs is incorporated as if restated fully herein.

169. Evans' OIG complaint against IPRA was an exercise of his free speech.

170. IPRA officials, including Sharon Fairley, harbored animus against Evans for complaining to OIG.

22

Plaintiff's Exhibit 1 Page 22

171.   Evans decision to not voluntarily retire was an exercise of his freedom of association.

172.   IPRA officials, including Sharon Fairley, harbored animus against Evans for returning to work at CPD instead of voluntarily retiring.

173.   As a result of this animus, IPRA officials re-opened the Rita King investigation by claiming that Evans gave false statements in his initial interview about King.

174.   The complaint that alleged that Evans gave false statements in his interview was brought by Franko and Hayes.

175.   At all relevant times, Fairley supervised Franko and Hayes.

176.   At all relevant times, Fairley was ultimately responsible for IPRA's official actions.

177.   IPRA officials changed Evan's recommended punishment for the Rita King incident from 14 days to termination.

178.   There was no probable cause to re-open the King file and change Evans' recommended punishment because there was no information to suggest that Evans lied in his interview.

179.   The Rita King investigation would not have been re-opened and his recommended punishment would not have changed but/for Fairley, Franko, and Hayes' animus about the OIG complaint and his refusal to retire.

180.   As a result of Defendants' retaliatory inducement to prosecute, Evans suffered damages in the form of loss of reputation and extreme anxiety.

23

**WHEREFORE**, Plaintiff prays that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants.

B. Award compensatory damages in favor of Plaintiff and against Defendants.

C. Award punitive damages in favor of Plaintiff and against Defendants.

D. Award attorneys' fees and costs in favor of Plaintiff and against Defendants.

E. Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT VI
## CIVIL CONSPIRACY
### (Illinois State Law Claim)
### (Campbell and Jones)

181. Defendants conspired by concerted action to accomplish the unlawful purpose of falsely criminally charging Evans and perpetrating administrative complaints against him, with the goal of ousting him from the Chicago Police Department and saving face for IPRA.

182. Defendants worked to achieve these goals by unlawful means, including, but not limited to: illegally leaking confidential information to the public; recklessly and willfully mishandling investigations involving Evans; publishing and causing to be published false and defamatory statements; and referring the

24

investigation of the Williams matter to the Cook County State's Attorney's Office without probable cause.

183.    In furtherance of the conspiracy, Defendants committed the aforementioned overt acts and were otherwise willful participants in joint activity.

184.    The acts of misconduct set forth in this complaint were undertaken with malice, willfulness, recklessness, and indifference toward Evans' rights, the truth, and notions of justice.

185.    As a direct and proximate cause of this conspiracy, Evans suffered and continues to suffer damages in the form of loss of reputation, extreme anxiety, attorney's fees, loss of income, loss of comp time, loss of seniority with the Chicago Police Department, loss of rank with the Chicago Police Department, loss of pay status with the Chicago Police Department, loss of pension time credit with the Chicago Police Department, and emotional distress.

WHEREFORE, Plaintiff prays that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants.

B. Award compensatory damages in favor of Plaintiff and against Defendants.

C. Award punitive damages in favor of Plaintiff and against Defendants.

D. Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

25

## COUNT VII
### RESPONDEAT SUPERIOR
**(Defendant City of Chicago)**

186.   Each of the foregoing paragraphs is incorporated as if restated fully herein.

187.   In committing the acts alleged in the preceding paragraphs, the "IPRA Defendants" were employed by and acting as agents of the City of Chicago.

188.   Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, should the "IPRA" Defendants be found liable for any or all of the Illinois State Law Claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any judgment (other than punitive damages) he obtains.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## COUNT VIII
### INDEMNIFICATION
**(Defendant City of Chicago)**

189.   Each of the foregoing paragraphs is incorporated as if restated fully herein.

190.   Defendant City of Chicago is the indemnifying entity for the actions of the "IPRA Defendants," described above, who took these actions while in the course and scope of their employment with the City of Chicago.

26

**WHEREFORE,** should the "IPRA Defendants" be found liable of the claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any judgment (other than punitive damages) he obtains, pursuant to 745 ILCS 10/9-102.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

**COUNT IX**
**RESPONDEAT SUPERIOR**
**(Defendant WBEZ)**

191.   Each of the foregoing paragraphs is incorporated as if restated fully herein.

192.   In committing the acts alleged in the preceding paragraphs, Defendant Chip Mitchell was employed by and acting as an agent of WBEZ.

193.   Defendant WBEZ is liable as principal for all torts committed by its agents.

WHEREFORE, should Defendant Chip Mitchell be found liable for any or all of the Illinois State Law Claims set forth above, Plaintiff demands that Defendant WBEZ be found liable for any judgment (other than punitive damages) he obtains.

Plaintiff's Exhibit 1 Page 27

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all triable issues.

**DATED:** July 28, 2016

Respectfully Submitted,

/s/ Victor P. Henderson
Attorney For Plaintiff

Victor P. Henderson
**HENDERSON PARKS, LLC**
330 South Wells Street, Suite 300
Chicago, IL 60606
Telephone: (312) 262-2900
Facsimile: (312) 262-2901

28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Chicago Police officer SHANNON SPALDING;<br>Chicago Police Officer DANIEL ECHEVERRIA,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 12-cv-8777<br>)<br>) Judge Gary Feinerman<br>)<br>)<br>) |

### *MONELL* CLAIM STIPULATION
### IN REGARD TO "CODE OF SILENCE"

Defendant, City of Chicago (the "City"), by and through its attorneys, stipulates to the

following with respect to Plaintiffs' *Monell* claim against Defendant City:

1.      There is and has been a code of silence within the Chicago Police Department

pursuant to which individual police officers, as the Mayor stated in his December 9, 2015

comments to the City Council, have had a "tendency to ignore, deny or in some cases cover up

the bad actions of a colleague or colleagues."

2.      This code of silence is directly contrary to the official written rules, policies, and

training of the Chicago Police Department.

3.      This code of silence is not a pervasive, widespread, and well-settled custom or

practice to which the City's chief policy-makers have been deliberately indifferent.

### CITY OF CHICAGO

By: **s/ Alan S. King**
Alan S. King, Esq. (ARDC #06198223)
Noreen H. Cull, Esq. (ARDC # 06229417)

85732075.3

 **Gmail**

**Patrick Morrissey <patrickmorrissey1920@gmail.com>**

---

## RE: King, Draft Pretrial Order - Call Summary

**Patrick Morrissey** <patrickmorrissey1920@gmail.com>                    Fri, Aug 25, 2017 at 3:43 PM
To: Kenneth Battle <kbattle@hoblawfirm.com>
Cc: "Green, Jonathan" <Jonathan.Green@cityofchicago.org>, "KupeArion, Carla" <Carla.KupeArion@cityofchicago.org>,
"Harris, Tiffany" <Tiffany.Harris@cityofchicago.org>, "Walker, Anna" <Anna.Walker@cityofchicago.org>, "Mowatt, Raoul"
<Raoul.Mowatt@cityofchicago.org>, "Beck, Gregory" <Gregory.Beck@cityofchicago.org>, Winnefred Monu
<wmonu@hoblawfirm.com>, Thomas Morrissey <tgmorrisseylaw@gmail.com>, William Bazarek
<wbazarek@hoblawfirm.com>

Counsel:

I disagree with your summary of the August 23, 2017 conferral about the pretrial order. We agreed to hold a conferral, at your request, despite a previously scheduled settlement conference with Judge Weisman and a prearranged phone call with a client in the IDOC.

The proposed pattern instructions, found on the Seventh Circuit's Website, have been adopted by the Committee. I had a trial with Judge Kennelly in the spring and he represented that he was on the committee that approved the revised instructions.

During the phone conversation, defendants agreed to provide a proposed verdict form. I have yet to receive a copy of this document.

Additionally, defendants represented during this call that copies of defense exhibits Q, R, and S (various medical records) will not be provided to plaintiff.

The City also agreed to investigate whether it will stipulate to a Code of Silence in the police department as an exchange to producing the Mayor at trial. Please provide a status concerning this issue by early next week.

Finally, an issue presented during Supt. Johnson's deposition relating to copies of various CR files that plaintiff identified as a trial exhibit. When copied, the watermark identifying the exhibit as "confidential" distorts the text. I requested the City to reproduce these limited documents without the watermark or with a less intrusive mark. Counsel said they will not reproduce the documents.

As agreed, attached please find red-line revisions to the pretrial order. Please make any additional revisions with red-line markings and please indicate when, next week, you are available for a meet and confer about the progress of the pretrial order.

Pat Morrissey

[Quoted text hidden]

---

**2 attachments**

📄 **August25_PlaintiffChanges_King - Draft Pretrial Order with All Defense Counsel Edits.docx**
94K

📄 **Jury Instructions with Defendants Objections.docx**
44K

